IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| AYAEL JADE AMARÉ, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:22-cv-00005 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| LAZER SPOT, INC., | ) | By:   Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Ayael Jade Amaré ("Amaré") brought this action against Defendant Lazer Spot, Inc. ("Lazer Spot"), alleging four causes of action related to her employment and eventual termination from Lazer Spot: (1) hostile work environment under Title VII of the Civil Rights Act ("Title VII"); (2) retaliation under Title VII; (3) discrimination under the Americans with Disabilities Act ("ADA"); and (4) sexual harassment under the Virginia Values Act ("VVA").

The matter is now before the court on Lazer Spot's motion for summary judgment. The motion has been fully briefed and is ripe for decision. For the reasons discussed below, the court will grant Lazer Spot's motion as to Amaré's ADA and VVA claims, but deny it as to her Title VII claims.

## I.    STATEMENT OF FACTS

The following facts are either undisputed or presented in the light most favorable to Amaré, the nonmoving party. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)).

Amaré is a transgender and intersex woman who began medically transitioning from male to female in August 2018. (Amaré Dep. 34:7–8 [ECF No. 68-1].) In July 2017, Lazer Spot hired Amaré as a yard driver at a Target distribution center in Stuarts Draft, Virginia. (*Id.* 34:19–35:20; Amaré Decl. ¶ 2 [ECF No. 70, Ex. A].) In that role, Amaré moved trucks around the distribution center's property (*e.g.*, in and out of dock doors, throughout the parking lot, etc.) according to Target's needs. (Amaré Dep. 35:16–20.) Amaré claims that, during her employment, she was subject to harassment because of her sex, gender identity, perceived sexual orientation, and disabilities.

Several other Lazer Spot employees are relevant to Amaré's lawsuit. This group includes the three men who allegedly harassed her: Michael Hulvey, the site manager; Scott Brown, a yard driver until May 2018 and then a crew leader; and Donnie Bussard, another yard driver. (*Id.* 39:5–6; 49:24–50:10.) It also includes Corey Johnson, a regional manager; Candice Mirasol, Lazer Spot's Chief People Officer; and Marshall Schillinger, another yard driver. (*Id.* 46:10–12, 51:16–23; Mirasol Decl. ¶ 1 [ECF No. 68-2].) Of these other people, Amaré only discussed her gender identify or sexual orientation with Schillinger. (Amaré Dep. 65:13–16.)

The issues underlying Amaré's claims stem from her working with Hulvey, Brown, and Bussard. (*Id.* 49:18–21.) According to Amaré, these three individuals repeatedly harassed her when she worked with them. (Amaré Decl. ¶¶ 1, 3–4.) They also allegedly called Amaré derogatory names—like "fluffy" and "faggot"—outside of her presence based on their perceptions of Amaré as a gay, cisgender man and generally "spew[ed] a lot of LGBTQ[I]A+ phobia in the workplace." (Amaré Dep. 59:6–60:5, 63:24–64:1, 85:15.) The three men also

purportedly made comments about, among other things, Amaré going to the restroom "to masturbate," "reinsert [her] butt plug," and "stick a dildo up [her] ass." (*Id.* 83:20–85:17.) She contends that many of these comments were made to other employees at the Target location and then relayed to her by those who heard the comments. (*Id.* 85:4–22.)

But Amaré also heard insults directly, either in-person or over the truck radios. (Amaré Decl. ¶ 5.) For instance, Hulvey allegedly insinuated to Amaré that she had AIDS after he found a syringe in a truck because he viewed Amaré as a gay man. (Amaré Dep. 59:6–19; Mirasol Decl. Ex. D.) Hulvey also supposedly called Amaré "a queer" to her face. (Amaré Dep. 68:21–69:5.) Most appallingly, Amaré claims she heard Bussard say that transgender people were mentally ill and "the cure was a bullet between the eyes." (*Id.* 64:2–7.)

Amaré reported the harassment to Lazer Spot's human resources ("HR") department by emailing Mirasol about the issues on November 9, 2017, and September 19, 2018. (*See* Mirasol Decl. Exs. D, E.) Upon receipt, Mirasol sent these complaints to Lazer Spot's legal and management teams. (*Id.* ¶¶ 7–8.) Amaré supposedly had two phone calls with Mirasol regarding the work environment as well. (Amaré Dep. 81:22–25.) Amaré contends that she also sent Johnson, the regional manager, "numerous text messages between December 2017 and December 2018 about the harassment" (Amaré Decl. ¶ 6), but does not remember if she ever reported Bussard's egregious comment about the "cure" for transgenderism (Amaré Dep. 67:13–16). Lazer Spot says she did not. (Mirasol Decl. ¶ 9; Johnson Decl. ¶ 6 [ECF No. 68-3].)

Because of Amaré's reports, Johnson says he had "a very stern talk" with Hulvey in December 2017. (Johnson Decl. Ex. B, 2017-12-21 103100 speakerphone CJ.mp3 12:54–13:10

[hereinafter Dec. 2017 Call].)[1] Amaré asserts, however, that this conversation did not alleviate the harassment; in fact, it only worsened. (*See* Amaré Dep. 91:25–92:4; Amaré Decl. ¶ 4; Johnson Decl. Ex. B, 2018-9-20 1718 speakerphone CJ.mp3 2:20–2:25, 5:30–5:36 [hereinafter Sept. 2018 Call].) Nine months later, after Amaré emailed Mirasol about the continued harassment, Johnson spoke with Hulvey again and relayed to him that, if Amaré's complaints were true, he and the other drivers needed to stop harassing her. (Sept. 2018 Call 1:34-2:10.) At least until the time Amaré was terminated, Hulvey, Brown, and Bussard remained Lazer Spot employees. (Amaré Dep. 81:6–17.)

Amaré had unexcused absences from work on December 11 and 13, 2018, and she was late to work on December 14. (*Id.* 52:14–25.) On December 28, Johnson fired Amaré. (*Id.* 35:4, 51:24–52:4.) Johnson claims the decision to terminate Amaré was entirely his own and based on her unexcused absences and tardiness in December, along with a previous write-up she received for an unexcused absence on June 12, 2018. (Johnson Decl. ¶ 7.) Amaré contends that she should not have been written up for the June absence because Hulvey approved her taking that day off, which she planned to do because the day was a trigger for her post-traumatic stress disorder ("PTSD"), but he reversed course "at the last minute." (Amaré Decl. ¶ 11.) In any event, according to Amaré's co-worker, it was unusual for Johnson to terminate Amaré for unexcused absences because other Lazer Spot employees were not disciplined for missing work without notice. (Schillinger Decl. ¶¶ 10–11 [ECF No. 70, Ex. B].)

---

[1] Citations that include ".mp3" are to audio files that Lazer Spot produced as part of Johnson's declaration. The audio files are surreptitious recordings Amaré made of certain telephone calls and meetings, which were turned over during discovery. (*See* Johnson Decl. ¶ 8, Ex. B.) These files are available in the clerk's office via Box.com.

In April 2019, following her termination, Amaré filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") under her name at the time, Christopher Black. (Compl. Ex. B. [ECF No. 2-3].) She changed her name to Ayael Jade Amaré in June 2019, so the EEOC issued an amended charge in April 2020 with her new name. (*See* Compl. Exs. A, C [ECF Nos. 2-2, 2-4]; Amaré Dep. 82:17–22.) Except for the name change, the amended charge was the same as the initial charge. (*Compare* Compl. Ex. B, *with* Compl. Ex. C.) After receiving notices of her right to sue from the EEOC (Compl. Exs. D–E [ECF Nos. 2-5, 2-6]), Amaré filed a timely complaint in this court on January 25, 2022 (ECF No. 2-1).

Following a prolonged procedural history that is not relevant here, Lazer Spot moved for summary judgment on all of Amaré's claims on March 22, 2024. (Mot. Summ. J. [ECF No. 67].) Amaré filed her response in opposition on April 5, which included sworn declarations by Amaré and Schillinger as exhibits.[2] (Pl.'s Opp'n Br. [ECF No. 70].) The court heard arguments on the motion on April 24. (ECF No. 74.)

## II.   STANDARD OF REVIEW

Under Rule 56(a), the court can only "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn*, 710 F.3d at 213. When making this determination, the court considers "the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits"

---

[2] Lazer Spot did not oppose the consideration of these later declarations at this stage.

filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213. Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). It may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992).

### III.   ANALYSIS

Although Amaré's ADA and VVA claims fail as a matter of law, material factual disputes preclude summary judgment on her Title VII claims.

## A. Title VII Claims: Hostile Work Environment and Retaliation

### 1. Administrative Exhaustion

As a threshold matter, Lazer Spot contends that Amaré did not exhaust administrative remedies for her Title VII claims because the allegations in her complaint exceed the scope of her EEOC charge. (*See* Def.'s Br. at 10–12 [ECF No. 68].) Amaré disputes this, arguing that the allegations in her EEOC charge are reasonably related to those in her complaint. (Pl.'s Opp'n Br. at 3–5.) The court agrees with Amaré.

Exhaustion of administrative remedies under Title VII requires the plaintiff to file a charge of discrimination with the EEOC and receive a right-to-sue letter from that agency before bringing suit in federal court. *Ray v. Amelia Cnty. Sheriff's Off.*, 302 F. App'x 209, 212–13 (4th Cir. 2008); *see* 42 U.S.C. §§ 2000e-5(b), (f)(1). The "exhaustion requirement is a non-jurisdictional 'processing rule, albeit a mandatory one' that must be enforced when properly raised." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022) (quoting *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1851 (2019)). "Rather than 'a formality to be rushed through,' this exhaustion requirement is 'an integral part of the Title VII enforcement scheme.'" *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012) (quoting *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005)). Allowing the EEOC the "first crack at these cases respects Congress's intent 'to use administrative conciliation as the primary means of handling claims, thereby

encouraging quicker, less formal, and less expensive resolution of disputes.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

Based on these principles, a plaintiff's Title VII claim is confined to "the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Khoury v. Meserve*, 85 F. App'x 960, 960 (4th Cir. 2004); *see Hentosh v. Old Dominion Univ.*, 767 F.3d 413, 416 (4th Cir. 2014). In other words, "factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko*, 429 F.3d at 509. "If the discrimination claims 'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Walton*, 33 F.4th at 172 (quoting *Chacko*, 429 F.3d at 509).

Here, Amaré's EEOC charge asserts that in September and December 2018, Hulvey, Brown, and Bussard made lewd and derogatory comments to her—including calling her "queer" and "faggot"—because of how they perceived her sexual orientation. (*See* EEOC Charge ¶ 1 [ECF No. 2-4].) The charge further states that, in December 2018, Amaré complained to her regional manager, Johnson, and Lazer Spot HR about the comments, and that she was written up and terminated the same month. (*Id.*) As such, Amaré alleges in the charge that she was discriminated against based on her sexual orientation and retaliated against for complaining about that discrimination, in violation of Title VII. (*Id.* ¶ 3.)

Amaré's complaint sets forth similar, but more detailed, allegations related to her Title VII claims. For example, she alleges that Hulvey, Brown, and Bussard repeatedly harassed her based on their perceptions of her as a gay man. (Compl. ¶ 13 [ECF No. 2].) This harassment purportedly included the three men frequently calling Amaré "derogatory names such as

faggot and queer" and suggesting she—who presented as male at the time—was in a sexual relationship with a male co-worker, Schillinger. (*Id.* ¶¶ 14–15, 17.) The complaint also states that Brown and Bussard said "transgender people . . . were mentally ill and should be subjected to 'corrective rape' or shot." (*Id.* ¶ 21.) Amaré claims that she reported this harassment to Johnson and Lazer Spot's HR department, but they took little, if any, meaningful action to stop it. (*Id.* ¶¶ 20–22, 24.) Amaré further asserts in her complaint that she was terminated in retaliation for complaining about the harassment and that Lazer Spot's stated reason for her termination—her unexcused absences—was pretextual. (*Id.* ¶¶ 19, 41, 43.) In support of this contention, she alleges that, after her termination, Hulvey said, "[M]e and [Johnson] finally found a reason to get rid of him," and Brown said, "[N]ow that the faggot is gone this site is better off." (*Id.* ¶ 19.)

Lazer Spot argues that the Title VII harassment allegations in Amaré's complaint "exceed what would naturally have arisen from an investigation of the Charge." (Def.'s Br. at 11–12.) Specifically, it claims that the EEOC charge only alleges two instances of sexual harassment—in September and December 2018—while the complaint alleges discrimination since November 2017. (*Id.* at 12.) Lazer Spot accurately summarizes explicit differences between the charge and complaint, but its argument too narrowly construes administrative-exhaustion requirements. The claims in a complaint only need to be reasonably related to, or expected to follow from an investigation of, an administrative charge. *Sydnor*, 681 F.3d at 594. The allegations in an EEOC charge do not need to precisely match those set forth in a complaint. *Cf. Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir.

1988) (citation omitted) ("EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading.").

In this matter, the specific allegations in Amaré's charge are reasonably related to the harassment allegations in her complaint. Both focus on the same type of discrimination (sexual harassment), by the same people (Hulvey, Brown, and Bussard), in the same place (at the Target distribution center). *See Sydnor*, 681 F.3d at 594. Additionally, a meaningful investigation of Amaré's allegations in her EEOC charge would have been expected to reveal the panoply of harassment she allegedly faced at Lazer Spot, including the incidents that are set forth in greater detail in her complaint. The EEOC charge therefore served its primary purpose by notifying Lazer Spot of the alleged wrongdoing and giving it the opportunity to investigate and resolve the issue. *See Chacko*, 429 F.3d at 510 (noting one of the primary goals of the exhaustion requirement is to "notif[y] the employer of the alleged discrimination"). Accordingly, Amaré exhausted administrative remedies for her hostile-work-environment claim.

For the retaliation claim, Lazer Spot concedes that the EEOC charge sets forth alleged retaliation that resulted in Amaré's termination in December 2018. (*See id.* at 12 ("The only retaliation in the Charge is a write-up and Amaré's termination in December 2018.").) The complaint alleges the same (Compl. ¶¶ 19, 41, 43), so Title VII's exhaustion requirement is satisfied for this claim.

### 2. Hostile Work Environment

Lazer Spot also challenges the merits of Amaré's Title VII allegations. To establish a hostile-work-environment claim under Title VII, Amaré must show that "there is (1)

unwelcome conduct; (2) that is based on [her sexual orientation]; (3) which is sufficiently severe or pervasive to alter [her] conditions of employment and to create an abusive work environment; and (4) which is imputable to" Lazer Spot. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (cleaned up). On brief, the parties only disputed whether genuine issues of material facts existed as to the third and fourth elements. At the motion hearing, however, Lazer Spot acknowledged that there is a jury question regarding the fourth element. The court finds that there is also a genuine dispute of material fact on the third element, so the claim survives summary judgment.

### i. Severe or Pervasive Conduct

The test for severe or pervasive conduct has both subjective and objective components; it requires a plaintiff to establish that "she perceived—and that a reasonable person would perceive—the environment to be abusive or hostile." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 208 (4th Cir. 2014). In applying this test, the court must consider the totality of the circumstances, including: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In order to be actionable, the "conduct must be [so] extreme [as] to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). A hostile work environment is one "pervaded with discriminatory conduct 'aimed to humiliate, ridicule, or intimidate,' thereby creating an abusive atmosphere." *E.E.O.C. v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 316 (4th Cir. 2008) (quoting *Jennings v. Univ. of N.C.*, 482 F.3d 686, 695 (4th Cir. 2007)). This typically involves repeated conduct but can also be based

on an "an isolated incident of harassment . . . that . . . is extremely serious." *See Boyer-Liberto*, 786 F.3d at 277 (citing *Faragher*, 524 U.S. at 788) (cleaned up). Nonetheless, mere "rude treatment by [co-workers]," *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), or "callous behavior by [one's] superiors," *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), is not actionable under Title VII.

Lazer Spot argues that any unwelcome conduct by its employees was not severe or pervasive because most of the discriminatory comments Amaré alleges were not made in her presence. (Def.'s Br. at 20–21.) There may be a higher bar for a claimant to show a hostile work environment based on statements made outside of her presence, but "comments made to others are . . . relevant to determining whether [Amaré] was subjected to severe or pervasive . . . harassment." *Sunbelt Rentals, Inc.*, 521 F.3d at 317 (cleaned up). In any event, Lazer Spot's argument is a red herring; Amaré does not exclusively base her hostile-work-environment claim on second-hand comments. Amaré asserts that multiple disparaging comments *were* made to her directly, including Hulvey suggesting that she had AIDS and calling her a queer. (Amaré Dep. 59:8–10, 68:21–69:7; Mirasol Decl. Ex. D.) She also heard denigrating comments over the truck radios (Amaré Decl. ¶ 5), and Bussard allegedly stated, in Amaré's presence, that LGBTQIA+ people are mentally ill and transgender people could be "cured" with a "bullet between the eyes" (Amaré Dep. 64:1–23; *see* Def.'s Br. at 21).

These purported actions, viewed in the light most favorable to Amaré, satisfy the subjective and objective components of severe or pervasive conduct. It is undisputed that Amaré subjectively perceived Lazer Spot as a hostile work environment based on her co-workers' comments. (*E.g.*, Amaré Dep. 66:12, 67:1–7.) A jury could also find that a

reasonable person would perceive the work setting as abusive and hostile. Indeed, Bussard's comment suggesting LGBTQIA+ individuals should be shot likely creates a genuine dispute of fact about this objective component on its own because it involved a threat of death or severe physical harm. *See Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 497 (4th Cir. 2015); *see also Sunbelt Rentals, Inc.*, 521 F.3d at 318 (quoting *White v. BFI Waste Servs.*, 375 F.3d 288, 298 n.6 (4th Cir. 2004)) ("[T]he presence of 'physical threats undeniably strengthens a hostile work environment claim.'"); *Boyer-Liberto*, 786 F.3d at 284 ("[A]n employee will have a reasonable belief that a hostile work environment is occurring based on an isolated incident if that harassment is physically threatening or humiliating."). When considering that comment together with the many other derogatory statements allegedly made by Lazer Spot employees about Amaré, a jury could easily determine that her work environment was objectively abusive and hostile. *See Sunbelt Rentals, Inc.*, 521 F.3d at 317–18. Accordingly, "the conduct at issue in this case is far removed from the mere off-hand comments or teasing that courts have found of insufficient severity" for a Title VII cause of action, and a reasonable jury could view it as so severe that it rises to the level of a hostile work environment. *Pryor*, 791 F.3d at 497.

### ii. Conduct Imputable to Lazer Spot

There is also a genuine dispute of material fact about whether the purported harassment can be imputed to Lazer Spot. Although an employer is "not strictly liable for acts of harassment that occur in the workplace[,] . . . [it] maintains a responsibility to reasonably carry out . . . dual duties of investigation and protection." *Id.* It is well-established that "an employer may be liable for hostile work environments created by co-workers and third parties 'if it knew or should have known about the harassment and failed to take effective action to

stop it . . . by responding with remedial action reasonably calculated to end the harassment.'" *Id.* at 498 (quoting *Sunbelt Rentals, Inc.*, 521 F.3d at 319) (cleaned up). Stated differently, there are two requirements for harassment to be imputed to an employer: the employer (1) had actual or constructive knowledge of the harassment and (2) did not take reasonable steps to end it. *See id.*

For the first element, "[k]nowledge of harassment can be imputed to an employer if a 'reasonable [person], intent on complying with Title VII,' would have known about the harassment." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 334 (4th Cir. 2003) (quoting *Spicer v. Va. Dep't of Corr.*, 66 F.3d 705, 710 (4th Cir. 1995)). An employer cannot avoid Title VII liability for co-worker harassment "by adopting a 'see no evil, hear no evil' strategy," *id.*, or simply because the plaintiff did not report every incident of harassment using the employer's formal procedures, *see Reid v. Dalco Nonwovens, LLC*, 154 F. Supp. 3d 273, 293 (W.D.N.C. 2016). The record must be viewed as a whole, and "[e]vidence of repeated complaints to supervisors and managers creates a triable issue as to whether the employer had notice of the harassment." *Sunbelt Rentals, Inc.*, 521 F.3d at 320 (citing *Harris v. L & L Wings, Inc.*, 132 F.3d 978, 982 (4th Cir. 1997)).

Lazer Spot's argument that the alleged harassment in this matter cannot be imputed to it rests in large part on its employees' representations that Amaré never reported Bussard's heinous LGBTQIA+ comment to them. (Def.'s Br. at 21–22; *see* Mirasol Decl. ¶ 9; Johnson Decl. ¶ 6.) While they may not have had specific knowledge of that particularly odious comment, it is undisputed that both Lazer Spot's HR department and Johnson were otherwise aware of the supposed harassment Amaré regularly faced based on her complaints in

November 2017 and September 2018. (*See, e.g.*, Mirasol Decl. ¶¶ 7–8; Dec. 2017 Call; Sept. 2018 Call.) Amaré further states that she sent Johnson "numerous text messages between December 2017 and December 2018" (Amaré Decl. ¶ 6) and had two phone calls with Mirasol (Amaré Dep. 81:22–25) about the abusive work environment. Schillinger avers that he also reported the harassment to Lazer Spot's HR department and that Hulvey, Brown, and Bussard's derogatory comments about Amaré were made "on an almost weekly basis" to other employees of both Lazer Spot and Target. (Schillinger Decl. ¶¶ 4, 8.) Even if neither Mirasol nor Johnson knew of the most egregious comment, the alleged frequency of the offensive conduct and repeated complaints create a genuine dispute of material fact regarding Lazer Spot's actual or constructive knowledge about the harassment. *See, e.g.*, *Sunbelt Rentals, Inc.*, 521 F.3d at 318–20.

Because a jury could find that Lazer Spot had knowledge of the harassment, the harassing conduct is imputed to it for purposes of summary judgment unless there is no genuine dispute of material fact that Lazer Spot took action that was "reasonably calculated to end the harassment." *Id.* at 319 (internal citation omitted). As Lazer Spot concedes, there is a genuine dispute about the sufficiency of its corrective action.

"[T]he reasonableness of a company's actions depends, in part, on the seriousness of the underlying conduct." *Pryor*, 791 F.3d at 498. In assessing the reasonableness of an employer's response, the court considers, among other things, "the promptness of the employer's investigation when complaints are made, whether offending employees were counseled or disciplined for their actions, and whether the employer's response was actually effective." *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011).

In this matter, the parties dispute whether Lazer Spot's response to Amaré's complaints of harassment was reasonable. Lazer Spot believes that its response was reasonably calculated to address the alleged harassment. (Def.'s Br. at 22–23.) Mirasol forwarded Amaré's complaints to management and its legal department. (Mirasol Decl. ¶¶ 7–8.) Johnson had "a very stern talk" with Hulvey about Amaré's complaints in December 2017, approximately one month after Amaré sent them to HR. (*See* Dec. 2017 Call 12:54–13:10; Mirasol Decl. Ex. D.) Johnson replaced Hulvey as Amaré's supervisor because of her complaints. And when Amaré complained to HR in September 2018 that the harassment had continued, Johnson told Hulvey the same day that he and the other drivers needed to stop harassing Amaré if she was telling the truth. (*See* Sept. 2018 Call 1:34–2:10; Mirasol Decl. Ex. E.)

While a jury could credit these actions as valuable, it could still find that Lazer Spot did not act reasonably to end the harassment based on other evidence, such as Hulvey, Brown, and Bussard apparently never receiving counselling or discipline outside of Johnson's verbal warnings. Johnson issued this light reprimand despite knowing that previous discussions with these men about the claimed harassment were unsuccessful and that Amaré perceived the harassment as worsening over time. (*See* Sept. 2018 Call 2:10–2:25, 5:30–5:36.) As such, a jury could determine that Lazer Spot's response was "reluctant and reactive" and not reasonably calculated to stop the harassment. *See Pryor*, 791 F.3d at 499–500. A genuine dispute of fact therefore remains about whether the alleged harassment can be imputed to Lazer Spot.[3]

At bottom, the record in this case requires the weighing of evidence and the drawing of legitimate inferences from the facts to determine whether the claimed harassment was

---

[3] To its credit, Lazer Spot conceded as much at oral argument on its motion.

severe or pervasive, what knowledge Lazer Spot had about it, and if Lazer Spot took reasonable steps to end it. Making those determinations is the function of a jury, *Anderson*, 477 U.S. at 255, so the court will deny Lazer Spot's motion for summary judgment on Amaré's hostile-work-environment claim.

### 3. Retaliation

In addition to her hostile-work-environment claim, Amaré also asserts a claim against Lazer Spot for retaliation under Title VII. "To establish a prima facie case of retaliation in contravention of Title VII, a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d at 281 (cleaned up).

The parties do not dispute that the evidence satisfies the first two elements of a retaliation claim. Amaré's complaints to Lazer Spot HR and management about alleged sexual harassment is protected activity. *See, e.g.*, *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). And Lazer Spot took an adverse employment action against Amaré when it terminated her in December 2018.[4] *See id.* They disagree on the third element, although Lazer Spot admitted at the motion hearing that whether this element is satisfied may be an issue for the jury.

---

[4] The complaint also sets forth (1) a more difficult workload and (2) threats of a write-up or termination for being unproductive as purported adverse employment actions against Amaré. (Compl. ¶¶ 41–42.) But Amaré conceded any retaliation claim based on those actions—assuming, without deciding, that she even could pursue a claim on those grounds—because her response brief did not address Lazer Spot's arguments that neither are adverse employment actions. *See, e.g.*, *Allen v. City of Dunn*, No. 5:22-cv-114, 2023 WL 8934647, at *9 (E.D.N.C. Dec. 27, 2023) ("Failing to respond . . . to arguments in the moving party's briefing[] constitutes a concession of an issue . . . .").

Lazer Spot contends that there is no causal connection between Amaré's complaints and her termination because she was terminated for a legitimate, non-discriminatory reason: she had three unexcused absences. (Def.'s Br. at 15; Johnson Decl. ¶ 7.) Amaré, however, asserts that proffered reason is pretextual and points to Schillinger's declaration that Lazer Spot typically did not discipline employees in any way, let alone terminate them, for unexcused absences. (Pl.'s Opp'n Br. at 7–8; Schillinger Decl. ¶¶ 10–11.) Schillinger's sworn statement about the disparate treatment of similarly situated employees would allow a reasonable jury to infer that Lazer Spot's actual reason for firing Amaré was to retaliate against her for complaining about the sexual harassment she faced, not because of her unexcused absences. *See Jennings v. Frostburg State Univ.*, 679 F. Supp. 3d 240, 279 (D. Md. 2023) (quoting *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015)) ("A plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group."). Because inferences must be drawn from the record about if there was a causal link between Amaré's harassment complaints and Lazer Spot firing her, the court must deny summary judgment on the Title VII retaliation claim.

## B. ADA Claim

Next, Lazer Spot argues that summary judgment is appropriate on Amaré's ADA claim because she did not exhaust her administrative remedies for this claim. Unlike its similar argument for the Title VII claims, this argument is persuasive as to the ADA claim.

The ADA incorporates Title VII's enforcement procedures, "including the requirement that a plaintiff must exhaust [her] administrative remedies by filing a charge with

the EEOC before pursuing a suit in federal court." *Sydnor*, 681 F.3d at 593; *see supra* section III.A.1 (discussing how the allegations in a plaintiff's complaint must be reasonably related to those in her EEOC charge). Amaré failed to exhaust administrative remedies for her ADA claim because the disability-related allegations in her EEOC charge and complaint have insufficient overlap.

Amaré's EEOC charge broadly describes two disability-related matters. First, she claims that Hulvey asked to see her medical records, but Johnson told her not to worry about sharing them after she expressed discomfort with the request. (EEOC Charge ¶ 1.) Second, she claims that Lazer Spot wrote her up for not showing up to work on June 12, 2018, despite Hulvey and Johnson knowing she would be out that day because of a "disability[-]related issue." (*Id.*)

Her complaint sets forth different disability-related allegations, primarily related to irritable bowel syndrome ("IBS"), Type 2 diabetes, and PTSD. (*See* Compl. ¶ 26.) In her complaint, Amaré claims that Hulvey and Brown harassed her because she frequently needed to use the restroom due to her IBS and diabetes. (*Id.* ¶ 31.) She further claims that Hulvey "threatened her with write-ups and/or termination" and gave her a negative job evaluation because of her restroom breaks. (*Id.* ¶¶ 28–29.) And she alleges that Lazer Spot employees denied her breaks for meals and checking her blood sugar, refused to accept the results of a Department of Transportation physical, and harassed her after she suffered an on-the-job injury that changed her job function. (*Id.* ¶¶ 32, 34, 39.) These assertions depict regrettable conduct if true, but they are not set forth in—or reasonably related to—the allegations in the EEOC charge about Hulvey requesting Amaré's medical records and not granting her

requested time off.[5] Accordingly, an ADA claim based on these factual allegations is procedurally barred. *See Chacko*, 429 F.3d at 509–10.

To be sure, Amaré's EEOC charge and complaint overlap insofar as both reference Hulvey requesting her medical records (*compare* EEOC Charge ¶ 1, *with* Compl. ¶¶ 29, 38), but the filings markedly differ in terms of the alleged conduct related to that request. The EEOC charge states that Hulvey requested Amaré's medical records once in December 2017, which Johnson told her "not to worry" about sharing. (EEOC Charge ¶ 1.) As such, the charge indicates that this issue was resolved by Johnson's directive and does not allege continued harassment related to it. The complaint, on the other hand, claims that Hulvey gave Amaré a lower job-evaluation and continued to harass her, at least until September 2018, because she did not share her medical records. (Compl. ¶¶ 29, 38.) The complaint, unlike the charge, also states that Amaré complained to Lazer Spot's HR department, rather than to Johnson, about Hulvey's request. (*Id.* ¶ 38.) The charge and complaint therefore set forth "different time frames, actors, and discriminatory conduct" related to Hulvey's medical-records request, so an ADA claim based on the request cannot proceed due to a failure to exhaust administrative remedies. *See Chacko*, 429 F.3d at 506.

---

[5] Amaré's EEOC charge could arguably be construed as setting forth an ADA claim based on Lazer Spot's failure to accommodate her June 2018 time-off request for a disability-related issue (EEOC Charge ¶ 1), which she also mentions in her declaration and response brief (Amaré Decl. ¶ 11; Pl.'s Opp'n Br. at 10). Her complaint, however, never discusses the incident, and Amaré cannot sustain an ADA claim based on items mentioned in her EEOC charge, discovery, or a brief, but not pleaded in her complaint. *See Coon v. Georgia Pac. Corp.*, 829 F.2d 1563, 1568–70 (11th Cir. 1987); *cf. Dove Air, Inc. v. Fla. Aircraft Sales, LLC*, No. 1:10-cv-47, 2011 WL 3475972, at *8 (W.D.N.C. Aug. 9, 2011) (collecting cases to support that a plaintiff "cannot constructively amend its [c]omplaint by asserting an argument in a responsive brief").

**C.  VVA Claim**

Finally, as Amaré concedes, the court must grant summary judgment on the VVA claim because the VVA was not enacted until after she worked at Lazer Spot and does not apply retroactively.

## IV.   CONCLUSION

For the foregoing reasons, the court will grant Lazer Spot's motion for summary judgment as to Amaré's ADA and VVA claims, but deny it as to her Title VII claims.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 9th day of May, 2024.

*/s/ Thomas T. Cullen*

HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE